# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

06-1053
CRIMINAL
_____

## UNITED STATES OF AMERICA,

Appellee,

v.

## TERRY ALLEN GARNETTE,

Appellant.
_____

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE*
*SOUTHERN DISTRICT OF IOWA*
*HONORABLE HAROLD D. VIETOR, SENIOR JUDGE*
_____

## BRIEF OF APPELLEE
_____

**Matthew G. Whitaker**,
*United States Attorney*

**Richard L. Richards**
**Shannon Olson**
*Assistant United States Attorneys*

U. S. Courthouse Annex, Suite 286
100 East Court Avenue
Des Moines, Iowa  50309
Tel:    (515) 284-6347
Fax:    (515) 284-6281

Attorneys for Appellee

## SUMMARY OF THE CASE

Terry Allen Garnette, defendant-appellant, appeals his sentences for one count of using a minor to engage in sexually explicit conduct for the purpose of producing a visual image, with the use of materials which had been shipped in interstate commerce, in violation of 18 U.S.C. § 2251(a); and one count of distribution of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252(a)(2). Garnette argues that his 255-month sentence was unreasonable, and that the district court erred in failing to consider his personal history of childhood sexual abuse in determining his sentence. The United States submits that the court's sentencing decision was reasonable in light of the factors provided in 18 U.S.C. § 3353(a). Moreover, the United States contends that the court's decision not to lower Garnette's sentence in light of his childhood victimization was within the court's discretion, and did not result in an unreasonable sentence.

The United States does not believe that oral argument is necessary and suggests that the briefs and record adequately present the facts and legal arguments. If the Court grants oral argument, the United States requests permission to participate and believes that ten minutes per side would be sufficient.

i

# TABLE OF CONTENTS

SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . .  i

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  v

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

     I.    Garnette's sentence was reasonable . . . . . . . . . . . . . . . . . . . . . . . . .  16

          A.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

          B.    Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

     II.   The district court's decision to deny a downward sentencing variance based on Garnette's personal history of childhood sexual abuse was not an abuse of discretion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

          A.    Standard of Review and Argument . . . . . . . . . . . . . . . . . . . . .  27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . .  31

CERTIFICATE OF SERVICE AND VIRUS SCAN . . . . . . . . . . . . . . . . . . . . . .  32

Appellate Case: 06-1053    Page: 3    Date Filed: 04/17/2006 Entry ID: 2034014

# TABLE OF AUTHORITIES

**CASES**

United States v. Booker, 543 U.S. 220 (2005) . . . . . . . . . . . . . . . . . . . v, 11, 16, 27

United States v. Croxford, No. 04-4158, 2006 WL 541250 (10th Cir., March 7, 2006) (unpublished opinion) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Dalton, 404 F.3d 1029 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . 16

United States v. Danser, 270 F.3d 451 (7th Cir. 2001) . . . . . . . . . . . . . . . . . . . 26

United States v. Fawbush, 946 F.2d 584 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . 19

United States v. Frokjer, 415 F.3d 865 (8th Cir. 2005) . . . . . . . . . . . . v, 19, 27, 29

United States v. Gann, No. 04-5840, 2005 WL 3528917 (6th Cir., Dec. 21, 2005) (unpublished opinion) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Gatewood, 438 F.3d 894 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . 19

United States v. Lazenby, 439 F.3d 928 (8th Cir., March 10, 2006) . . . . . . . . . . 16

United States v. Newsome, 428 F.3d 685 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . 26

United States v. Ohlinger, 377 F.3d 785 (7th Cir. 2005) . . . . . . . . . . . . . . . . . . 26

United States v. Schwalk, 412 F.3d 929 (8th Cir. 2005) . . . . . . . . . . . . v, 20, 21, 23

United States v. Sharpley, 399 F.3d 123 (2nd Cir. 2005) . . . . . . . . . . . . . . . 24, 25

United States v. Wright, 373 F.3d 935 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . 20

United States v. Yahnke, 395 F.3d 823 (8th Cir. 2005) . . . . . . . . . . . . . . . . . . . 16

Appellate Case: 06-1053     Page: 4     Date Filed: 04/17/2006 Entry ID: 2034014

# TABLE OF AUTHORITIES CONTINUED

## STATUTES

18 U.S.C. § 2251(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I, 1

18 U.S.C. § 2251A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

18 U.S.C. § 2252(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I, 1

18 U.S.C. § 2252(a)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 2252A(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 3553 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 23, 26

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I, 13, 14, 16, 17, 19

18 U.S.C. § 3553(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 3553(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

18 U.S.C. §§ 3553(a)(2)-(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 3553(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## RULES

U.S.S.G. § 2G2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

U.S.S.G. § 2G2.(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 23

U.S.S.G. § 3A1.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## OTHER

Protect Act of 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

Appellate Case: 06-1053   Page: 5   Date Filed: 04/17/2006 Entry ID: 2034014

# STATEMENT OF THE ISSUES

I.  Whether Garnette's sentence was unreasonable?

    1.  *United States v. Booker*, 543 U.S. 220 (2005).

    2.  *United States v. Frokjer*, 415 F.3d 865 (8th Cir. 2005).

    3.  *United States v. Schwalk*, 412 F.3d 929 (8th Cir. 2005).

II. Whether the district court's decision to deny a downward variance for Garnette's personal history of sexual abuse was an abuse of discretion?

    1.  *United States v. Frokjer*, 415 F.3d 865 (8th Cir. 2005).

Appellate Case: 06-1053   Page: 6   Date Filed: 04/17/2006 Entry ID: 2034014

## STATEMENT OF THE CASE

On July 28, 2004, the federal grand jury for the Southern District of Iowa returned a four-count Indictment against defendant-appellant Terry Allen Garnette, (®. 1)[1], charging him with one count of using a minor to engage in sexually explicit conduct for the purpose of producing a visual image, with the use of materials which had been shipped in interstate commerce, in violation of 18 U.S.C. § 2251(a); one count of distribution of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252(a)(2); one count of receipt of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252 (a)(2); and one count of possession of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252(a)(4)(B).

On April 26, 2005, Garnette entered a plea of guilty to two counts of the indictment: one count of using a minor to engage in sexually explicit conduct for the purpose of producing a visual image, with the use of materials which had been shipped in interstate commerce, in violation of 18 U.S.C. § 2251(a); and one count

---

[1] In this brief, "R" refers to the District Court Clerk's Record, followed by the docket number of the referenced document. "PT" refers to the transcript of the change of plea hearing on April 26, 2005, followed by page number. "ST" refers to the transcript of the sentencing hearing on December 14, 2005, followed by page number. "PSR" refers to the final draft presentence report dated December 7, 200[5], followed by paragraph number. "Br" refers to defendant-appellant's opening brief, followed by page number.

1

of distribution of child pornography produced with interstate materials, in violation of 18 U.S.C. § 2252A(a)(2)(B). ®. 41, 43-44). On June 9, 2005, the parties filed a joint motion for access to Garnette for the purpose of conducting a psycho-sexual mental evaluation. ®. 47). The court granted this motion on June 10, 2005. ®. 49).

On December 13, 2005, Garnette filed a sentencing memorandum seeking a downward departure or variance from the sentencing guidelines based on: (1) his sexual abuse as a child; (2) his "super" acceptance of responsibility; and (3) his vulnerability to victimization while in prison. ®. 57, 61). The United States filed a sentencing memorandum on December 14, 2005, urging the court not to depart on the grounds identified in Garnette's memorandum. ®. 60). Garnette was sentenced on December 14, 2005, before the Honorable Harold D. Vietor, Senior Judge. ®. 63). Garnette received sentences of 255 months imprisonment on count one of the indictment, and 240 months imprisonment on count two, to be served concurrently. ®. 63). Thereafter, Garnette timely filed a notice of appeal. ®. 65).

## STATEMENT OF FACTS

On June 28, 2004, Garnette's live-in girlfriend discovered that Garnette had taken photographs of her four-year-old daughter in which Garnette held the child on his lap in sexually provocative poses. (PSR ¶ 4, 6). The pictures were stored

Appellate Case: 06-1053    Page: 8    Date Filed: 04/17/2006 Entry ID: 2034014

on Garnette's home computer. (PSR ¶ 4). Garnette's girlfriend had decided to search the computer because of her suspicions regarding Garnette's behavior, and her knowledge that he had been trading images online for at least a month. (PSR ¶ 4). She discovered several pictures of Garnette with her daughter, including: a photograph of the child sitting on Garnette's lap as he used his left hand to expose her genitals by pulling her underpants down; a photograph of the child sitting on Garnette's lap as he used his left hand to expose her genitals by pulling her underpants to the side; and a photograph of the child naked from the waist down sitting with her legs spread apart on Garnette's lap, with the camera focused on her genitals. (PSR ¶ 6). While one of these photos was on the screen, the child walked into the room and said, "Look Mom, that's me." (PSR ¶ 4).

In addition to the photographs of her child, Garnette's girlfriend found that Garnette had posted an "ad" regarding her child. In the ad, Garnette indicated that he had a female toddler under the age of five that he wanted to trade for another child. (PSR ¶ 19). The ad was apparently posted on global sites, as responses from the ad involved the United States and seven other countries. (PSR ¶ 19). At least one of the responses discussed purchasing the child, rather than trading her. (PSR ¶ 19). Garnette's girlfriend also discovered hundreds of saved images of other children, from infants to teens, involved in various sex acts. (PSR ¶ 4). She

3

notified authorities, who executed a search warrant, and arrested Garnette. (PSR ¶ 4). Garnette apparently learned of his impending arrest beforehand, and used the time police spent getting the warrant to attempt frantically to delete things from his computer before it was seized. (PSR ¶ 19).

Authorities seized Terry's computer, videos, CDs, and other materials. (PSR ¶ 7). They found well over 600 images of child pornography and at least 13 video clips. (PSR ¶¶ 7, 42(e)). Many of these images and videos were of an exceedingly violent, sadistic, and degrading nature. (PSR ¶ 7). For example, Garnette had saved a series of video clips involving a four-year-old girl who was a known victim from Texas commonly referred to as "Baby J." (PSR ¶ 8). One of these clips showed Baby J lying topless on a bed in front of an adult male. (PSR ¶ 8). She was crying, "No, No, No," and trying to escape his grasp as he held her head, put his penis in her face, and ejaculated into her mouth. (PSR ¶ 8). Another clip showed Baby J naked, bound, blindfolded, and bent over a table. (PSR ¶ 8). An adult male penetrated her anally with his penis and ejaculated on her back and anus. (PSR ¶ 8). Another showed Baby J bound at the ankles and wrists while an adult male smeared lubricant on her backside and anus and then penetrated her anally with his penis. (PSR ¶ 8). In a different video clip, Baby J was naked, bound at the ankles in a spread-eagle manner that was clearly painful while an

4

adult male penetrated her anally with his penis and vaginally with his fingers. (PSR ¶ 8). Garnette had downloaded and saved numerous additional clips of Baby J involving bondage, fellatio, anal rape, and vaginal rape. (PSR ¶ 8).

Garnette had also downloaded and saved images from "Husker Fan," a known perpetrator from Kentucky who photographed his rape and sexual abuse of his seven-year-old step-daughter. (PSR ¶ 9). The "Husker Fan" images included scenes of bondage, sadism, anal rape, vaginal rape, and anal and vaginal rape with foreign objects. (PSR ¶ 9). In one particularly grisly image, the seven-year-old was lying naked on a bed with the perpetrator standing over her holding a small, medieval sword. (PSR ¶ 9). The perpetrator had written the words "cut me," "slut," and "hurt me" with simulated blood on the child's chest and abdomen. (PSR ¶ 9).

In addition to these images, Garnette had also saved images from the "Hailey series" and the "Heather series" involving identified victims aged eight to ten years old. (PSR ¶¶ 10, 16). In one of these photographs, an eight year old girl was wearing only a dog collar and was crying while being vaginally raped by an adult male. (PSR ¶ 10). All of Garnette's child pornography collection involved female children. (PSR ¶ 10). Most showed these children being abused by adult males, but some involved adult females, and some involved children being forced

Appellate Case: 06-1053     Page: 11     Date Filed: 04/17/2006 Entry ID: 2034014

to perform sexual acts on one another. (PSR ¶ 10). Themes of bondage, sadism, and anal rape were prevalent among Garnette's collection. (PSR ¶ 10).

Garnette's girlfriend reported that she had moved in with Garnette in December of 2003. (PSR ¶ 4). Garnette successfully encouraged her to seek full-time custody of her four-year-old daughter, who until that time had been living with an aunt and uncle. (PSR ¶ 17). Shortly after the child moved in, Garnette's demeanor began to change drastically. (PSR ¶ 18). He became secretive, agitated, and argumentative. (PSR ¶ 18).

During this time, Garnette's girlfriend suffered ruptured ovarian cysts and was prescribed medication to control the pain from this condition. (PSR ¶ 18). Garnette used his girlfriend's illness and the drowsiness caused by her medication to spend time alone with her daughter. (PSR ¶ 19). It was during this time, that the photographed episodes of abuse occurred. (PSR ¶ 19). Shortly thereafter, the child's behavior began to change. (PSR ¶ 19). While she had initially been happy around Garnette, she began to pull away from him and did not want to be left alone with him. (PSR ¶ 19). Garnette's girlfriend also knew that Garnette enjoyed bondage, sadism, and masochism. (PSR ¶ 12). He had previously asked her to "role play" by dressing up as a young schoolgirl, and was very excited when he found out that she shaved her pubic area. (PSR ¶ 12). During their relationship,

Appellate Case: 06-1053    Page: 12    Date Filed: 04/17/2006 Entry ID: 2034014

Garnette began spending time on his computer, trading images online. (PSR ¶ 4). Although Garnette's girlfriend was initially in denial, eventually the suspicions raised by these circumstances culminated in her fateful decision to search Garnette's computer after he left for work. (PSR ¶ 19).

In addition to Garnette's current girlfriend, authorities spoke to a woman who had been in a past relationship with him. (PSR ¶ 11). She reported that while they were together, Garnette had approached her seventeen year old daughter and told her "he had something he could stick up her butt that she would like." (PSR ¶ 11). She also told police that Garnette was "into" bondage, sadism and masochism, and had asked her to shave her pubic area. (PSR ¶ 11).

Garnette agreed to a post-*Miranda* interview with authorities. He related that he had been sexually abused as a child by his step-father. (PSR ¶ 5). Garnette told officers he had begun looking at pornography on the internet and believed it "triggered something in his brain." (PSR ¶ 5). Garnette related that he had discovered "that there are other people out there like him, and people out there that are a lot scarier than he is." (PSR ¶ 5). He developed a specific interest in bondage, sadism and masochism. (PSR ¶ 5). He admitted engaging in bondage, sadism and masochism with consenting adult women, but denied acting on his fantasies with children. (PSR ¶ 5). Garnette downloaded and traded child

7

pornography with individuals from the United States, Holland, England, New Zealand, and the Phillippines. (PSR ¶ 5). Garnette estimated that he spent a couple of hours a day looking at child pornography and talking with others about sex on the computer. (PSR ¶ 5). He admitted he had downloaded hundreds of images. (PSR ¶ 5). Garnette stated he was glad he was caught because he "knew it would have gotten worse." (PSR ¶ 29).

Garnette underwent two mental evaluations during the pendency of his case. (PSR ¶¶ 108, 112). The first, a competency examination, was prompted by Garnette's claims that he was hearing voices. ®. 16). Evaluators remained unconvinced of the validity of these claims. (PSR ¶ 108). They observed that "the defendant could be sitting without incident in a session and if the topic of his perceptual disturbances came up, he would begin looking out the window, stating he was experiencing the voices at that moment." (PSR ¶ 108). The evaluator noted, "[w]hile it is possible the defendant is experiencing hallucinations, his presentation is uncommon." (PSR ¶ 108). Testing suggested Garnette was exaggerating his psychological difficulties. (PSR ¶ 109). He endorsed severe psychological symptoms to a greater degree than his clinical presentation suggested, and even greater than those reported by individuals experiencing acute and severe psychopathology. (PSR ¶ 109). His responses were "consistent with

8

individuals who exaggerate their symptoms for the purpose of secondary gain or to call attention to their subjective distress." (PSR ¶ 109). Although Garnette denied any sexual arousal stemming from his child pornography viewing habits, he was diagnosed as a pedophile, as well as suffering from a dysthymic disorder, amphetamine dependence, and cannabis dependence. (PSR ¶ 111). He was found competent to stand trial. (PSR ¶ 111).

Prior to his sentencing, the probation office requested that Garnette complete a psycho-sexual evaluation. ®. 47; PSR ¶ 112). During this evaluation, Garnette reported that he had been viewing pornography on his computer for "three or four years." (PSR ¶ 112). He indicated he was initially just curious about child pornography, but admitted (contrary to his assertions during his competency evaluation) that as time went on "it became more of a focus and he began masturbating after viewing the images." (PSR ¶ 112). Garnette's preference was for girls age 10 to 12, and he fantasized about having them give him "blow jobs" and "straight sex." (PSR ¶ 12). Garnette expressed the belief that "it is everyone's right to have sex and that children try to sexually provoke adults." (PSR ¶ 112).

The results of the psycho-sexual evaluation indicated that Garnette demonstrated "a significant set of research-supported risk factors for a medium risk of him recommitting a sexually deviant offense." (PSR ¶ 113; PSR Attachment -

9

Psychosexual Evaluation p. 6). The likelihood of Garnette re-offending was found to be approximately 25% within 5 years and approximately 37% within 10 years. (*Id*.) This likelihood of re-offense may well have been understated, as the risk assessment instruments used in the evaluation measured only the likelihood that Garnette would be reconvicted in the relevant time frame. (Psychosexual Evaluation, p. 9). They did not measure the likelihood that Garnette would re-offend without getting caught and successfully prosecuted. (*Id*.) Garnette's test results suggested "that he has attributes and behaviors highly similar to those of known sex offenders and the condition of sex deviance may be a component of his personality make-up." (*Id*.)

The presentence report calculated Garnette's sentencing range as 180 to 210 months. (PSR ¶ 35). The probation officer noted the presence of factors which may have warranted an upward sentencing departure or upward variance from the guidelines range. (PSR ¶¶ 143, 144). These factors included the allegation that Garnette was attempting to sell or trade the victim for an older child (PSR ¶ 143); and the fact that "[t]he images and video clips that the defendant possessed involved levels of sadism and cruelty far beyond what this Probation Officer typically witnesses in reviewing the discovery materials and applying the

10

enhancement for § 2G2.2(b)(3)."  (PSR ¶ 144).

Garnette filed no objections to the offense conduct portion of the pre-sentence report.  He did raise a number of objections to the descriptions of his prior run-ins with law enforcement, which were incorporated into the report.  (PSR ¶¶ 62, 68-69, 91-92).  In addition, Garnette objected to any upward departure or variance from the guidelines.  (PSR Addendum, p. 39).  He filed a sentencing memorandum requesting a downward variance due to: (1) the sexual abuse he suffered as a child; (2) his "super" acceptance of responsibility; and (3) his vulnerability to victimization while in prison.  ®. 61).

The United States filed a sentencing memorandum setting forth its position that: (1) congress had evidenced a strong intent to limit downward departures in child exploitation cases with the passage of the PROTECT Act of 2003, and Garnette's history of abuse did not impair his ability to understand the wrongfulness of his conduct, and thus did not merit a downward departure -- even with the increased latitude afforded by *United States v. Booker*, 543 U.S. 220 (2005); (2) that Garnette's cooperation produced no information of any consequence in the investigation or prosecution of any other person; and (3) that Garnette was 5'11", 190 pounds, and had provided no reason to suppose he would be a more likely target for abuse in prison than any other person convicted of

11

similar crimes.  ®. 60).

Garnette was sentenced on December 14, 2005.  ®. 63).  At the outset of the
hearing, the court asked Garnette whether there were any errors in the Pre-Sentence
Report.  (ST 6).  Garnette stated "As far as I know, Sir, there is not."  (ST 6).
Garnette's attorney added,  "Your honor, all of our objections were either
incorporated [by the PSR author] into the report or are contained at the back of the
report, so we have no objection."  (ST 6).  Garnette then presented the testimony of
his sister, who detailed the sexual abuse she and Garnette suffered at the hands of
one of their stepfathers.  (ST 7-13).  She related that the siblings were forced to
have sex either with their stepfather, or with each other, daily for four years
beginning when Garnette was five years old.  (ST 8-9).  The government presented
victim impact statements by the victim's mother and aunt.  (ST 14-18).  The
victim's aunt reminded Garnette that the victim had trusted in him to protect her.
(ST 17).  She described the victim as suffering from fear whenever she saw or
heard about Garnette.  (ST 17).  At the conclusion of the evidence and victim
statements, the court calculated Garnette's sentencing guidelines range as 180 to
210 months.  (ST 20-21).  Garnette asked the court to impose the statutory

minimum sentence of 15 years, while the government sought a maximum sentence

12

of 30 years.  (ST 25, 28).

The district court carefully considered and denied Garnette's requests for a downward sentencing variance based on his past victimization, his claimed "super acceptance of responsibility," and his vulnerability to victimization in prison.  (ST 29-31).  The court then examined the factors provided in 18 U.S.C. § 3553(a) and made the following findings:

> I think that there has to be a long isolation of the defendant from society, from children, and, as we know in approaching a sentencing, I am required to consider many factors, including of course, the guidelines, the nature and circumstances of the offense. They're serious.  This wasn't even a 12-year old girl, this was a 4-year-old girl; and, of course, we have the distribution of pedophilia pornography.
>
> The history and characteristics of the defendant.  He's been a long time actor in this underground, you might call it.
>
> The need for the sentence imposed to reflect the seriousness of the offense; I believe it's a very serious offense.  To promote respect for the law; I think only a severe sentence can promote respect for the law.  And to provide just punishment for the offense.
>
> To afford adequate deterrence to criminal conduct.  I never know how much general deterrence we get out of sentencing, but-- and particularly at cases like this, I don't know that others disposed to commit the same type of crime are going to refrain if they read in the paper what this defendant is sentenced to, but in theory at least a stiff sentence in this case should deter criminal conduct of others.
>
> To protect the public from further crimes of the defendant; and a severe sentence will most certainly do that, at least for as long as he is incarcerated.
>
> To provide defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; and I most certainly will recommend that he go to

13

the North Carolina facility and receive treatment and also substance
abuse treatment.

    The kinds of sentences available are the sentencing guideline
range. I have considered and given serious consideration to the
guidelines, as I must; and in the end it needs to be a sentence
sufficient but not greater than necessary to comply with the various
factors I've set forth.

    The final word: It must be under all the circumstances
reasonable.

    I'm not going to go to the statutory maximum, but I am going to
go above the top of the guideline range.

    The defendant is hereby committed to the custody of the United
States Bureau of Prisons to be imprisoned for a total term of 255
months on count 1, and 240 months on count 2, to be served
concurrently.

    That is, I believe, the midway point between the top of the
guideline range and the statutory maximum. (ST 29-33).

In addition to the court's oral declarations at sentencing, the Statement of

Reasons attached to the court's written Judgment Order provided other factors

justifying Garnette's sentence. (®. 64, p. 10-11). The Judgment cited the

provisions of 18 U.S.C. § 3553(a); and further found Garnette's sentence was

necessary: (1) "[t]o be consistent with the enhanced penalties put forth in the

Protect Act[;]" (2) "[t]o protect the public from a diagnosed pedophile with at least

a medium risk of re-conviction who warned he intended to commit worse offenses

had he not been caught and incarcerated[;]" (3) "[t]o adequately address and punish

the heinous level of sadism involved in the images of child pornography[;]" and (4)

"[t]o adequately address and punish the uncontested allegation the defendant was

Appellate Case: 06-1053     Page: 20     Date Filed: 04/17/2006 Entry ID: 2034014

attempting to sell or trade the victim for an older child." ®. 64, p. 11). In total, the upward variance applied by the district court represented an increase in sentence of 21% from the top of the guidelines range.

## SUMMARY OF ARGUMENT

The sentence imposed by the district court in Garnette's case was reasonable. The court carefully considered the facts of the case, made detailed findings under 18 U.S.C. § 3553, and imposed a sentence scrupulously designed to adhere to the statutorily announced aims of federal sentencing. The court's judgment was amply supported by the horrific facts of the defendant's crime, and his likelihood of recommitting such offenses in the future.

A balanced reading of the record does not support Garnette's argument that the court wrongly found it had no discretion to depart on the basis of his past sexual abuse. Instead, the court acknowledged that a downward variance or departure might be available in an appropriate case, but found that it was not justified under the circumstances in Garnette's case. The court's refusal to apply a downward variance was not an abuse of discretion.

15

# ARGUMENT

## I. Garnette's sentence was reasonable.

### A. *Standard of Review.*

Following *Booker*, the duty of a reviewing appellate court is to determine whether a sentence is unreasonable with regard to the factors listed in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261. This Court has held the appropriate standard of review is whether the district court abused its discretion by imposing an unreasonable sentence on the defendant. *United States v. Dalton*, 404 F.3d 1029, 1032 (8th Cir. 2005) (citing *United States v. Yahnke*, 395 F.3d 823, 826 (8th Cir. 2005)).

Sentences varying from the guidelines range are reasonable so long as the judge offers appropriate justification under the factors specified in 18 U.S.C. § 3553(a). *United States v. Lazenby*, 439 F.3d 928, 932 (8th Cir., March 10, 2006) (citations omitted). How compelling that justification must be proportional to the extent of the difference between the advisory range and the sentence imposed. *Id.* (citations omitted). A range of reasonableness is within the court's discretion. *Id.* (citations omitted).

16

**B.    Argument.**

18 U.S.C. § 3553(a) requires a district court to consider a number of factors, including the nature and circumstances of the offense and the history and characteristics of the defendant; 18 U.S.C. § 3553(a)(1); as well as the need for the sentence to reflect the goals of federal sentencing statutes.  18 U.S.C. §§ 3553(a)(2) - (7).  A review of the record reveals that the district court painstakingly noted and applied the appropriate factors in fashioning Garnette's sentence.  (ST 29-33).

Notwithstanding the court's careful analysis, Garnette claims his sentence was unreasonable.  (Br. 7-14).  First, Garnette argues that the reasons for variance expressed orally by the court at his sentencing -- the age of the child, the distribution of pedophilia pornography, and Garnette's longtime participation in "this underground" -- were either unsupported by the facts or were already accounted for in the sentencing guidelines.  (Br. 10).  This argument is not supported by the record or by relevant case law.

Garnette claims that the court's statement that he was a "long time actor in this underground" is "not supported by any facts at sentencing or in the presentence report."  (Br. 11).  Garnette admitted, however, that he had been viewing, downloading, and trading child pornography for approximately two years

17

prior to his arrest. (PSR Addendum, Psychosexual Evaluation, p. 4). Over the

following months, pornography involving children became "more of a focus" for

Garnette and he reported that he began masturbating after viewing child

pornography. (*Id.*)

Garnette's child pornography trading network became extensive, and he

downloaded and traded child pornography with individuals from the United States,

Holland, England, New Zealand, and the Phillippines. (PSR ¶ 5). By the time of

his arrest, Garnette was spending two hours a day downloading child pornography

and instant messaging other individuals about child pornography on his computer.

(PSR ¶ 5). He developed a special interest in bondage, sadism and masochism

involving children. (PSR ¶¶ 5-7). Garnette possessed hundreds of photos and

videos depicting the bondage, sadism and anal rape of children, including very

young victims. (PSR ¶¶ 7-10). In light of these undisputed facts, the district court

did not clearly err in finding Garnette to be a "long time actor in this

underground."

Garnette claims that the other factors announced by the court at his

sentencing -- the age of the victim and the distribution of child pornography --

were already taken into account the by guidelines and were thus inappropriate

18

bases for an upward variance. This claim may have had a degree of merit pre-*Booker*. See *United States v. Fawbush*, 946 F.2d 584, 587 (8th Cir. 1991) (241-month sentence re-imposed on remand affirmed in *United States v. Fawbush*, 978 F.2d 1264 (8th Cir. 1992) (unpublished opinion)).[2] After *Booker*, however, courts enjoy a greater degree of flexibility to consider factors as supporting a variance from the sentencing guidelines, even when those same factors would not have supported a departure. See e.g. *United States v. Frokjer*, 415 F.3d 865, 876 (8th Cir. 2005) (evidence not supporting departure may be considered for purposes of applying a variance, as "a sentencing court has more flexibility under *Booker* and § 3553(a) than it had under the mandatory guidelines"); *United States v. Gatewood*, 438 F.3d 894 (8th Cir. 2006) ("a guidelines departure prohibition does not preclude the district court from considering that factor with the issue is a variance under *Booker*.")

The advisory guidelines provide for a two-level enhancement where the victim is over 12 but under 16 years of age, and a four-level enhancement where the victim is under 12 years of age. U.S.S.G. § 2G2.1. The guidelines provide no further enhancements based on age for even younger victims. As noted by the

---

[2]All unpublished opinions cited in the government's brief are attached in an addendum, in accordance with Eighth Circuit Local Rule 28A.

19

district court, however, there is a world of difference between a twelve year old victim and a four year old victim. (ST 31). Pre-teenagers have the ability to understand and can articulate what has happened to them. They may even be able to physically resist to some degree. A four-year-old child, on the other hand, is completely physically overmatched by an adult assailant, may be unable to articulate what happened, and is totally reliant on adult care-givers for all the requirements of life. See e.g. *United States v. Schwalk*, 412 F.3d 929, 932-933 (8th Cir. 2005) (applying vulnerable victim enhancement in the case of a four-year-old child abuse victim).

Other Circuit Courts of Appeals have recognized that the extreme vulnerability of infant and toddler victims is not fully taken into account by the "under 12" enhancement in U.S.S.G. § 2G2.1. For example, in *United States v. Wright*, 373 F.3d 935, 943 (9th Cir. 2004), the Ninth Circuit Court of Appeals examined sentencing challenges raised by defendants convicted of committing sexual exploitation offenses involving children ranging in ages from 11 months old, 3 years old, and 13 years old. In upholding a "vulnerable victim" guidelines enhancement in spite of defendants' claims that the enhancement amounted to a "double-counting" of the age enhancement found in § 2G2.1, the Court noted:

Appellate Case: 06-1053    Page: 26    Date Filed: 04/17/2006 Entry ID: 2034014

> Most children under 12 are well beyond the infancy and toddler stages of childhood during which they are the most vulnerable. The guideline adjusting for victims under 12 does not take these especially vulnerable states of childhood into account,. . . .
>
> . . .
>
> These attributes of infancy and the toddler stage compel the conclusion that the district court did not err as a matter of law in applying the vulnerable victim adjustment. The extreme youth and small physical size factors challenged by the Wrights account for traits and characteristics - such as an inability to communicate, and inability to walk, and as this court noted in *Reardon*, increased pain upon sexual penetration - that roughly correlate with age, but are not necessarily related to age.

See also *Schwalk*, 412 F.3d at 933 ("if an offense guideline provides an enhancement for age of the victim, then the adjustment under § 3A1.1 may also be applied - and the vulnerability of the victim thus taken into account twice - if 'the victim was unusually vulnerable for reasons unrelated to age.' U.S.S.G. § 3A1.1, comment. (n. 2).")

Although *Schwalk* and *Wright* concern the application of the vulnerable victim enhancement, the United States submits that the reasoning behind these opinions should apply with equal force in the application of a upward variance under *Booker*. The victim in this case was four, not eleven or twelve. She could not stop Garnette from holding her on his lap and displaying her genitalia before his web cam. Nor has she been able to fully articulate what Garnette did to her. The degree of helplessness faced by this victim is far higher than would be faced

21

by an older child, and the court properly considered it in judging "the nature and circumstances" of Garnette's crime under § 3553.

Furthermore, in arguing that the district court failed to articulate sufficient reasons for its upward variance, Garnette completely ignores the additional factors provided in the court's written Judgment Order. (R. 64). Those factors included: (1) the court's consideration of the policies and aims made evident by congress with its passage of the PROTECT Act; (2) the court's desire to protect the public from future crimes by Garnette, particularly in light of Garnette's "medium" risk of re-conviction and his warning that he had intended to commit worse offenses had he not been caught; (3) the court's desire to adequately address and punish "the heinous level of sadism involved in the images of child pornography" Garnette had amassed; and (4) to punish the uncontested allegation that Garnette was attempting to sell or to trade the victim for an older child. (R. 64, p. 11). The enhancements available under the guidelines for these factors did not address the severity of Garnette's conduct or his likelihood of re-offense. It is true that Garnette received a four-level enhancement because the materials he collected portrayed "sadistic or masochistic conduct or other depictions of violence." This enhancement, however, would apply to images far less cruel and disturbing than those Garnette saved. In fact, the photographs and video clips Garnette possessed caused the

22

seasoned pre-sentence report author to recommend an upward variance or departure, based on the observation that "[t]he images and video clips the defendant possessed involved levels of sadism and cruelty far beyond what this Probation Officer typically witnesses in reviewing the discovery materials and applying the enhancement for § 2G2.2(b)(3)." (PSR ¶ 144).

Further, the offense conduct guidelines for Garnette's convictions do not provide for an enhancement for the attempted sale or trade of the victim for an older child.[3] Nor do the offense conduct guidelines provide enhancements for offenders who show a statistically significant risk of reconviction for similar crimes in the future. The district court properly considered these factors under 18 U.S.C. § 3553 and imposed a reasonable sentence. Arguably, the court could have imposed the same sentence prior to *Booker*, as even under the mandatory guidelines, departures were permitted where the court found an aggravating circumstance "of a kind, or *to a degree*, not adequately taken into consideration by the Sentencing Commission." *Schwalk*, 412 F.3d at 933 (citing 18 U.S.C. § 3553(b)). Certainly, with the increased flexibility available after *Booker*, the

---

[3]Garnette was not charged with the selling or buying of a child for use in the production of child pornography, which would have carried a thirty year mandatory minimum sentence. 18 U.S.C. § 2251A.

23

court's upward variance in reliance upon the extreme nature of Garnette's offense, could not fairly be said to amount to an abuse of discretion.

Garnette's final basis for claiming his sentence was unreasonable is his contention that others have committed "very similar" offenses, but received lesser sentences. (Br. 12-13). In support of this claim, Garnette cites three out-of-circuit cases (two of which are unpublished opinions), in which the defendants' received sentences shorter than his. A closer examination of the facts of these cases, however, casts doubt on whether they are truly "very similar" to Garnette's crime. None of the cases cited by Garnette involve four-year-old victims. See *United States v. Croxford*, No. 04-4158, 2006 WL 541250 (10th Cir., March 7, 2006) (unpublished opinion) (victim approximately eight or nine years old); *United States v. Gann*, No. 04-5840, 2005 WL 3528917 (6th Cir., Dec. 21, 2005) (unpublished opinion) (victims' ages approximately ten and twelve); *United States v. Sharpley*, 399 F.3d 123 (2nd Cir. 2005) (victims between ages of eleven and fifteen). Nor did any of these cases involve uncontested allegations that the defendant attempted to sell or trade his victim for an older child. Although each case involved the collection of child pornography, none of the cases reported pornography of the extreme violence and depravity characterizing Garnette's collection.

24

In *Sharpley*, the sole reported case cited by Garnette, the defendant received a mandatory minimum sentence of 15 years. *Sharply*, 399 F.3d at 127. Sharpley was, however, sentenced prior to *Booker*. After the decision in *Booker* was announced, Sharpley asserted it as a basis for relief on appeal. *Id.* The Second Circuit Court of Appeals rejected this claim, reasoning that any *Booker* error could not have prejudiced Sharpley, as he received the mandatory minimum sentence for his crime. *Id.* The court commented, however, that the *Booker* error might not have been harmless if asserted by the government. *Id.* at 127-28. Specifically, the court stated:

> We note that the analysis would be quite different if we were to consider the government's interests. Were a district court to sentence Sharpley today, it would be bound to consider the Guidelines range of 180 months and all other factors in Section 3553. Its sentence would have to be reasonable in light of these factors, but could conceivably be anything between the statutory minimum of fifteen years and the statutory maximum of thirty years. As a result, the district court's understandable error in using a mandatory Guidelines scheme was not necessarily harmless as to the government.

*Id.* (internal citations omitted). The fact that Sharpley received a 180-month sentence cannot represent a benchmark for the present case, particularly where the Second Circuit took pains to note that Sharpley's sentence could have been considerably longer under an advisory system.

25

In sum, the mere fact that other defendants may have received shorter sentences is not sufficient to establish an "unwarranted" sentencing disparity. There are key differences between the facts of Garnette's case and the cited cases that justify Garnette's longer sentence. Garnette has not established that his sentence is significantly longer than similarly situated individuals who have committed similar crimes. Indeed, a cursory search reveals defendants who have received much longer terms for similar conduct. See e.g. *United States v. Newsome*, 428 F.3d 685 (7th Cir. 2005) (324 month sentence for victimization of daughter and ex-girlfriend's daughter); *United States v. Ohlinger*, 377 F.3d 785 (7th Cir. 2005) (360 month sentence justified by defendant's history and continuing interest in sex with children); *United States v. Danser*, 270 F.3d 451 (7th Cir. 2001) (370 months for child-pornography charges arising from defendant's improper relationship with his daughter). Garnette's abuse of a four-year-old victim, his attempt to sell or trade the victim for an older child, his collection of unimaginably depraved child pornography, his risk of reconviction, his continuing belief that "children try to sexually provoke adults," and his intent to commit worse crimes if not arrested justify his 255 month sentence. The district court's judgment was carefully measured to address the factors listed in 18 U.S.C. § 3553, and did not amount to an abuse of discretion.

26

**II.    The district court's decision to deny a downward sentencing variance based on Garnette's personal history of childhood sexual abuse was not an abuse of discretion**.

    *A.    Standard of Review.*

A discretionary decision not to depart downward is unreviewable on appeal, unless the district court erroneously believed that it was without authority to grant the departure. *United States v. Frokjer*, 415 F.3d 865, 875 (8th Cir. 2005). The ultimate sentence imposed by the court is reviewed for reasonableness. *Booker*, 543 U.S. at 261.

    *B.    Argument.*

Garnette next argues that the district court failed to recognize its authority to depart or vary downward from the guidelines range based on his personal history of childhood sexual abuse. Generally, a court's refusal to depart downward is unreviewable on appeal, unless the court erroneously believed it was without authority to grant the departure. *Frokjer*, 415 F.3d at 875. This general rule remains intact after *Booker*. *Id*. A balanced reading of the court's sentencing comments in the present case reveals that the court operated under no such misconception.

A traditional departure would have been impossible in Garnette's case. Garnette's sentencing guidelines range was 168 to 210 months. (PSR ¶ 55).

27

Because of the applicable statutory minimum sentence, however, his sentencing range was 180 to 210 months. (PSR ¶ 55). There is no basis for a downward departure from a statutory minimum based on a defendant's past victimization.

Nonetheless, the district court examined the facts of Garnette's childhood to determine whether a downward variance was warranted. Specifically, the court stated:

> There are many victims in this case, many, many unknown in regard to distribution of pornography of children, and, of course, we know the victims--the direct victims in this case, and it is a tragedy. There's no question about that.
> And what happened to the defendant and his sister early in their lives is indeed a tragedy, but apparently the first chapter in many chapters in this book of tragedy.
> I have considered the defendant's arguments made in the sentencing memorandum, and while in certain types of cases extraordinary abuse as a child might be a basis for making a downward departure, I am not at all satisfied that it works in a case like this.
> I think what happened to him as a child no doubt was a contributing factor, if not the primary factor, in bringing about his own conduct as an adult; but that cannot justify a lower sentence in my opinion than is otherwise appropriate. (ST 30).

Garnette claims that the court failed to recognize its ability to depart downward in his case. (Br. 15). This argument is belied by the record. The court explicitly acknowledged that ". . . extraordinary abuse as a child might be a basis for making a downward departure, . . . ." (ST 30). Nevertheless, the court concluded that Garnette's victimization ". . .cannot justify a lower sentence in my

28

opinion that is otherwise appropriate." (ST 30). These statements, along with the court's careful dissection of the cases cited in Garnette's sentencing brief, demonstrate that the court was aware of its ability to vary downward, but chose not to do so.

Assuming *arguendo* that the court's statements could be construed as erroneously failing to recognize the court's ability to vary downward, any resulting error would be harmless. The record is clear that the court was not inclined to vary downward in sentencing Garnette, even if it had the knowledge that such a variance was available. "Even where a variance is permissible . . . it is not necessarily required, . . . ." *Frokjer*, 415 F.3d at 876. As discussed in Section I, *supra*, Garnette's sentence was reasonable, and the court did not abuse its discretion in denying a downward variance.

Appellate Case: 06-1053     Page: 35     Date Filed: 04/17/2006 Entry ID: 2034014

## CONCLUSION

For the foregoing reasons, and based on the entire record of this case, the

United States respectfully requests that Terry Allen Garnette's sentence be

affirmed.

Respectfully Submitted,

Matthew G. Whitaker
United States Attorney

By: /s/Shannon Olson
Shannon Olson
Assistant United States Attorney
U.S. Courthouse Annex, 2nd Floor
110 E. Court Avenue
Des Moines, Iowa 50309
Tel: (515) 284-6347
Fax: (515) 284-6281
Email: ShannonOlson@usdoj.gov

Appellate Case: 06-1053    Page: 36    Date Filed: 04/17/2006 Entry ID: 2034014

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,612 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 9.0 in Times New Roman font, 14 point.

Dated: April 14, 2006

/s/ Shannon L. Olson
Shannon L. Olson
Assistant United States Attorney

U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309
Tele: (515) 284-6257
Fax: (515) 284-6281

Appellate Case: 06-1053    Page: 37    Date Filed: 04/17/2006 Entry ID: 2034014

## CERTIFICATE OF SERVICE AND VIRUS SCAN

I hereby certify that I did on this 14th day of April 2006, mail two true and correct copies of the foregoing BRIEF OF APPELLEE by placing it in the U. S. mail, postage prepaid and addressed to the following:

Angela Campbell
Assistant Federal Defender
400 Locust Street, Suite 340
Des Moines, IA 50309-2255

I further certify that two diskettes labeled United States v. Terry Allan Garnette, Appellate No. 06-1053, were scanned for viruses by using the Trend Micro OfficeScan Client for Windows scan software program, which reported no viruses were found on either diskette. One of these diskettes is being sent to the United States Court of Appeals for the Eighth Circuit, and the other is being sent to the counsel listed above.

/s/ Michelle G. Glover
Legal Secretary, U. S. Attorney's Office
U. S. Courthouse Annex, Suite 286
110 East Court Avenue
Des Moines, Iowa 50309-2053
Tele: (515) 284-6347
Fax: (515) 284-6281

Appellate Case: 06-1053    Page: 38    Date Filed: 04/17/2006 Entry ID: 2034014